# UNITED STATES DISTRICT COURT
# DISTRICT OF MASSACHUSETTS

|  |  |
|---|---|
| In re Christopher R. Bell,<br><br>    Debtor.<br><br>Christopher R. Bell,<br><br>    Appellant,<br><br>    v.<br><br>Carolyn A. Bankowski, Chapter 13 Trustee,<br><br>    Appellee. | Civil Action No. 10-10870-DJC |

## MEMORANDUM AND ORDER

**CASPER, J.**                                                                                                                                                                 July 12, 2011

## I. Introduction

Appellant Christopher R. Bell ("Bell") appeals the order of the United States Bankruptcy Court sustaining the objection of the Chapter 13 Trustee, Carolyn Bankowski ("Trustee"), to Bell's Chapter 13 plan and denying confirmation of the plan on the ground that Bell's proposal to execute a new note and mortgage constituted an impermissible modification under the Bankruptcy Code. For the reasons set forth below, the order of the bankruptcy court is AFFIRMED.

## II. Background

Bell is the owner of real property located at 850 County Road, West Wareham, MA (the

"Property"). (App. R. 8; Eastern Br. at 4).[1]  On December 24, 2004, Bell granted a mortgage (the "Mortgage") on the Property in favor of Plymouth Savings Bank to secure a loan in the principal amount of $356,250.00. (Eastern Br. at 4).[2]

On March 19, 2008, Bell filed a voluntary petition for relief under Chapter 13 of the United States Bankruptcy Code, 11 U.S.C. § 101 *et seq*.[3]  On April 28, 2008, Eastern Bank timely filed a secured proof of claim against Bell in the amount of $383,200.97, inclusive of a prepetition mortgage arrearage, together with an itemization of outstanding principal balance of $343,141.27, interest of $24,339.53, and other fees and charges totaling $15,720.17 ("Eastern Bank's claim"). (Eastern Br. at 4). Prior to his filing for Chapter 13 bankruptcy, Bell's payments were eleven months in arrears. (Eastern Br. at 4).  Bell filed two Chapter 13 plans between April 2008 and late February 2010 to which Eastern Bank and the Trustee both objected. See Bankruptcy Ct. Dkt.

On March 21, 2010, Bell filed his Third Amended Chapter 13 Plan (the "Plan"). (App. R. 1-3). The Plan had a three-year term.  The Plan provides, in part:

> With respect to the claim of Eastern Bank, which is secured by MORE THAN the debtor's principal residence and thus could be modified, rather than modifying the claim, the debtor will pay the claim by executing a new Note and Mortgage in the standard Fannie Mae/Freddie Mac form, as modified for Massachusetts.  Under the new Note and

---

[1]For the purposes of this Memorandum and Order, all references to the parties' filings are abbreviated as follows: Appellate Record ("App. R."); Transcript of Motion Hearing in bankruptcy court on May 7, 2010 attached to Eastern Bank's brief ("Tr. 5/7/10"); Appellant Bell's brief ("Bell Br."); Appellee Trustee's brief ("Trustee Br."); and Eastern Bank's Brief ("Eastern Br.").

[2]Eastern Bank is successor-by-merger to Plymouth Savings Bank. (Eastern Br. at 4 n.1).

[3]In this opinion, the terms "Bankruptcy Code," "the Code," "section" and " § " refer to title 11 of United States Code, 11 U.S.C. § 101 *et seq.*, as amended by the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 ("BAPCPA"), Pub.L. No. 109–8.

2

> Mortgage, the debtor will pay the present value of the property securing the claim, which is $291,556.20 (after deducting adequate protection payments already made by the trustee) over a thirty-year term commencing the first business day of the month after the plan is confirmed, at a fixed annual rate of 6.75%. All payments shall be made directly to the Bank or its servicer. The payment amount for principal and interest is $2,268.02. An order discharging the debtor shall also discharge the existing Note and Mortgage.

(App. R. 1). The Plan further states that Bell will pay the purported balance of Eastern Bank's claim, or $59,899.97, as an unsecured claim arising after lien avoidance/cramdown. (App. R. 2).

Eastern Bank and the Trustee again objected to confirmation of the Plan. (App. R. 26, Bankruptcy Ct. Dkt. Nos. 128, 130). Eastern Bank objected on several grounds, including, but not limited, to the following: i) that the Plan attempted to modify the terms of the Note and the Mortgage by revoking the existing Note and Mortgage and issuing a new note and mortgage, the terms of which would extend beyond the life of the Plan. (Eastern Br. at 5; Bell Br. at 5); and ii) that any change in the interest rate, as Bell proposed, does not qualify as maintenance of payments and that therefore the Plan is not a plan of "cure and maintenance" as permitted by the Bankruptcy Code § 1322(b)(5). (Eastern Br. at 5). The Trustee objected to confirmation of the Plan, noting that the modified secured claim of Eastern Bank must be paid through the Trustee. (App. R. at 8; Eastern Br. at 5).

Bell argued that a new note and mortgage to satisfy Eastern Bank's claim did not constitute a "modification" but rather, was a permissible distribution of property and thereby in compliance with Bankruptcy Code § 1325(a)(5)(B). (App. R. 6-7; Bell Br. at 5). Eastern Bank's objection was overruled on procedural grounds, for which Eastern Bank sought reconsideration. (Bell Br. at 5; Eastern Br. at 5; App. R. 27, Dkt. Nos. 135, 137). The Bankruptcy Court (Hillman, J.) held a

hearing on May 7, 2010 on Eastern Bank's motion to reconsider and the Trustee's objection to confirmation of the Plan. At the hearing, the Trustee argued that a new note and mortgage, in a reduced amount and at a fixed rate of interest over a thirty-year period, constituted a modification of the existing Note and Mortgage and that Eastern Bank's claim, due to the proposed modification, must be paid through the life of the Plan. (Tr. 5/7/10 at 2-3). In response, Bell argued that distribution of property consisting of a new note and mortgage does not constitute a "modification" under the Bankruptcy Code (Tr. 5/7/10 at 3-4). The Court sustained the Trustee's objection, denied confirmation of the Plan and ruled that it need not address Eastern Bank's motion for reconsideration. (Tr. 5/7/10 at 5). The Court also ordered Bell to file another amended plan within the month. (App. R. 28, Dkt. Nos. 146, 147). Bell subsequently appealed to this Court. (Bankruptcy Ct. Dkt. No. 150). This Court has jurisdiction pursuant to 28 U.S.C. § 158.

## III. Discussion

### A. Standard of Review

On appeal, the district court reviews the bankruptcy court's legal determinations *de novo* and its factual determinations for clear error. In re Healthco Int'l Inc., 132 F.3d 104, 107 (1st Cir. 1997). The court must accept the bankruptcy judge's findings of fact unless a review of the record demonstrates that they are "clearly erroneous." TI Fed. Credit Union v. DelBonis, 72 F.3d 921, 928 (1st Cir. 1995).

Bell makes two arguments on appeal. First, Bell argues that his proposal to execute a new note and mortgage does not amount to a modification triggering § 1322, and as a result, the claim need not be paid within the life of the plan to the Trustee. Second, Bell contends that the execution of a new note and mortgage constitutes a "distribution of property" in compliance with §

4

1325(a)(5)(B) to cure pre-petition defaults within the meaning of § 1322(b)(3) and that because § 1325 is the only governing provision in deciding whether to confirm his plan, the plan term limitation as set forth in § 1322(d) is irrelevant.

### B. Whether Bell's Proposed Treatment of Eastern Bank's Claim Constitutes a Modification

Section 1322(a) of the Bankruptcy Code sets forth the mandatory elements for a Chapter 13 bankruptcy repayment plan to obtain court approval. 11 U.S.C. § 1322(a); see Barbosa v. Soloman, 235 F.3d 31, 37 n. 8 (1st Cir. 2001). Section 1322(b) provides "plan flexibility for Chapter 13 debtors by listing a number of permissive elements that may be included in any plan." In re Nosek, 544 F.3d 34, 44 (1st Cir. 2008). One such permissive element is a "modification," as set forth in section 1322(b)(2) which states that a plan may "modify the rights of holders of secured claims, other than a claim secured only by a security interest in real property that is debtor's principal residence, or of holders of unsecured claims, or leave unaffected the rights of holders of any class of claims." 11 U.S.C. § 1322(b)(2); see also Nobelman v. Am. Sav. Bank, 508 U.S. 324, 327 (1993). Section 1322(b)(2) permits debtors to modify such rights, "including the amount of the payments on the claim, the timing of the payments, and the finance charges." In re Nosek, 544 F.3d at 45 (citation omitted).

Where a debtor proposes to bifurcate[4] their mortgage into secured and unsecured claims and the creditor's claim extends beyond a debtor's principal residence, the bifurcation in itself constitutes a modification triggering § 1322(b)(2). See, e.g., In re Look, 383 B.R. at 213 (noting that

---

[4]Splitting a creditor's claim into secured and unsecured portions is commonly referred to as "claim 'bifurcation.'" In re Look, 383 B.R. 210, 211 (Bankr. D. Me. 2008) (citing 4 COLLIER ON BANKRUPTCY ¶ 506.03 (Alan N. Resnick & Harry J. Sommer, eds., 15th ed. rev. 2007)).

5

"[a]lthough Chapter 13 debtors are generally able to 'modify' (read bifurcate) the claims of secured creditors, § 1322(b)(2) precludes modification of the rights of creditors whose claims are secured 'only by a security interest in real property that is the debtor's principal residence'"); In re McGregor, 172 B.R. 718, 720 (Bankr. D. Mass. 1994); In re Legowski, 167 B.R. 711, 714-15 (Bankr. D. Mass. 1994).

However, once a debtor proposes to modify a secured creditor's claim, the Code does not allow a debtor to modify it without limitation. In re Martin, 444 B.R. 538, 544-45 (Bankr. M.D.N.C. 2011); In re Legowski, 167 B.R. at 715. Upon modifying a claim, courts have consistently held that a debtor must choose one of two options: i) the debtor may modify the terms of the note and mortgage, in which case all payments for the secured portion of the claim must be completed during the term of the Plan and cannot exceed the life of the Plan; or ii) the debtor may cure the mortgage default and maintain the same payments of principal and interest under the current note during the life of the plan and beyond, as necessary for the total principal payment to equal the amount of the secured claim. See, e.g., In re Martin, 444 B.R. at 545; In re Plourde, 402 B.R. 488, 491 (Bankr. D.N.H. 2009); In re McGregor, 172 B.R. at 721; In re Legowski, 167 B.R. at 715-16 (citing cases). That is, "even after claim splitting, the debtor is stuck having either to pay a large real estate secured claim in full during the plan or to maintain payments consistent with the original loan agreement . . . ." In re Murphy, 175 B.R. 134, 137 (Bankr. D. Mass. 1994) (citing 1 K. Lundin, CHAPTER 13 BANKRUPTCY, § 4.47 at 4-65 and § 4.49 at 4-68 (1994)).

Under the first option, modifying the terms of the mortgage note outright triggers the requirements of § 1322(d) which dictates the term of the plan and mandates that the full amount of the secured claim be paid over the life of the plan; payments cannot extend beyond the life of the

6

plan. See, e.g., In re Martin, 444 B.R. at 544; In re Hayes, No. 10-81284C-13D, 2011 WL 249450, at *2-3 (Bankr. M.D.N.C. Jan. 24, 2011); In re Valdes, No. 09–26712–BKC–AJC, 2010 WL 3956814, at *4 (Bankr. S.D. Fla. Oct.4, 2010); In re Plourde, 402 B.R. at 491 (citations omitted); In re Legowski, 167 B.R. at 716.

If a debtor chooses to exercise the second option, the plan must "provide for the curing of any default within a reasonable time and [provide for the] maintenance of payments while the case is pending. . . ." 11 U.S.C. § 1322(b)(5); see, e.g., In re Veliz, No. 08-13292, 2009 WL 3418638, at *1 (Bankr. D.R.I. Oct. 16, 2009). Although the Code does not define "maintenance of payments," courts have interpreted such language as constituting "the same principal and interest payments as provided in the note, within the time frame specified in the note." In re Veliz, 2009 WL 3418638, at *1 (citing In re McGregor, 172 B.R. at 721). That is, the payments must be made in accordance with the provisions of the mortgage note that existed prior to the bankruptcy proceedings. In re Plourde, 402 B.R. at 491-92.

Here, Bell's proposed Plan bifurcated Eastern Bank's claim into a secured claim for the value of the property, $291,556.20, and an unsecured claim for the balance. See App. R. 1-2. The Code permits Bell to divide Eastern Bank's claim into secured and unsecured portions because Eastern Bank's security for the note extended beyond the real property which is Bell's primary residence. See 11 U.S.C. § 1322(b)(2); Lomas Mortg. Inc. v. Louis, 82 F.3d 1, 2 (1st Cir. 1996). Once Bell bifurcated Eastern Bank's claim and proposed to change the terms of his existing mortgage by executing a new note and mortgage with different payment terms extending throughout a thirty-year period, he triggered § 1322(b)(2)'s modification provision. See, e.g., In re Martin, 444 B.R. at 544; In re Hayes, 2011 WL 249450, at *3; In re Valdes, 2010 WL 3956814, at *4; In re Plourde, 402 B.R.

7

at 491; In re Legowski, 167 B.R. at 716.

However, although Bell's Plan modifies Eastern Bank's claim, his proposal to execute a new note and mortgage does not fall within either one of the two permissible options when modifying a claim. His Plan does not propose to pay the entire secured claim over the term of the plan even though he proposes to change the terms of the mortgage by executing an entirely new note and mortgage (the first option) or cure any defaults and maintain the original note and mortgage, payments which may be made beyond the life of the plan (the second option). Rather, his Plan creates an entirely different option: substituting a new note and mortgage including new payment terms and new interest rate, payments which would extend <u>beyond</u> the life of the plan. Bell cannot create a new option under the Code by combining the options provided under § 1322(b)(2) and (b)(5), where none exists. See, e.g., In re Enewally, 368 F. 3d 1165, 1172 (9th Cir. 2004) (noting that "a chapter 13 debtor may not invoke both a modification of a secured creditor's claim under § 1322(b)(2) and the right to 'cure and maintain' beyond the plan term as authorized under § 1322(b)(5)"); In re Martin, 444 B.R. at 545 (explaining that "[a] debtor may choose one of two options – to 'cure and maintain' according to the original terms of the note, or to modify the terms of the note and complete payments of the secured portion of the claim within the life of the plan – but they may not choose both").

In proposing to execute a new note and mortgage with new payment terms which would extend beyond the term of the Plan, Bell attempts to modify the terms of the existing note and mortgage in a manner that is impermissible under the Code.

### C. Whether Bell's Purported Compliance with Section 1325(a)(5)(B) Warrants Confirmation of the Plan

Bell nonetheless argues that the proposed treatment of Eastern Bank's secured claim is not a modification triggering § 1322, but rather a "distribution of property" - a new note and mortgage - as permitted under § 1325(a)(5)(B). Bell contends that § 1322(b)(2) and § 1322(d)'s requirements are inapplicable here since the Code only requires that Bell comply with § 1325(a)(5) to obtain confirmation of the Plan.

Bell is correct that to confirm a debtor's Chapter 13 plan, a bankruptcy court must find that the plan satisfies the requirements set forth in 11 U.S.C. § 1325(a). Assocs. Comm. Corp. v. Rash, 520 U.S. 953, 956 (1997). Section 1325(a)(5)(B) provides that a Court must confirm a plan, with respect to each allowed secured claim provided for under the plan, "if one of three conditions is satisfied: [t]he secured creditor accepts the plan, see 11 U.S.C. § 1325(a)(5)(A); the debtor surrenders the property securing the property the claim to the creditor, see § 1325(a)(5)(C); or the debtor invokes the so-called 'cram down' power, see § 1325(a)(5)(B)." Rash, 520 U.S. at 957. Section 1325(a)(5)(B) provides, in relevant part, that "a court shall confirm a plan if. . .with respect to each allowed secured claim provided for by the plan . . . (i) the plan provides that . . . (I) the holder of such claim retain the lien securing such claim . . . (ii) the value, as of the effective date of the plan, of property to be distributed under the plan on account of such claim is not less than the allowed amount of such claim; and (iii) if - - (I) property to be distributed pursuant to this subsection is in the form of periodic payments, such payments shall in be in equal monthly amounts." Id.; Rash, 520 U.S. at 956. This "cram down" option allows a debtor to keep his property over a secured creditor's objection if the creditor retains its lien "and the debtor is required to provide the creditor with payments, over the life of the plan, that will total the present value of the collateral. . . ." Rash,

520 U.S. at 957 (citing § 1325(a)(5)(B)(i) and (ii)).

Here, because Eastern Bank has not accepted the plan, see § 1325(a)(5)(A), and because Bell has not surrendered the property to Eastern Bank, see § 1325(a)(5)(C), Bell seeks to exercise the "cram down" option in § 1325(a)(5)(B). (Bell Br. at 4-5). He argues that he may execute a new note and mortgage under this subsection. (Bell Br. at 4-5). Specifically, Bell contends that the delivery of a new note and mortgage amount to a "distribution of property," purportedly in compliance with section 1325(a)(5)(B) to cure pre-bankruptcy proceeding defaults within the meaning of section 1322(b)(3) which allows a debtor's plan to provide for the curing and waiving of any default. (Bell Br. at 10, 12).

Bell's proposal of a new note and mortgage, however, still fails to comply with § 1325(a)(5)(B) since the proposal does not provide Eastern Bank with payments, over the life of the plan, that total the present value of Eastern Bank's secured claim. As Bell acknowledges, (Bell Br. at 12), a number of courts have rejected his proposal, finding that a debtor is not permitted to distribute "property" over a period of time which exceeds the duration of the plan. See, e.g., In re Valdes, 2010 WL 3956814, at *4 (finding that a debtor cannot distribute such property over a period of time which exceeds the duration of the plan); In re Santiago, No. 08-15360-BKC-LMI, 2009 WL 3515705, at *3 (Bankr. S.D. Fla. Oct. 29, 2009) (concluding that because the plan "seeks to modify the payment terms of the Note, albeit indirectly, and circumvent the payment requirements of the Bankruptcy Code, the . . . Plan fails to satisfy the requirements of § 1325(a)(5) and is not confirmable"). Such is the case here, where the new note and mortgage proposed by Bell extends the payments to Eastern Bank beyond the term of the Plan.

To support his argument that a new note and mortgage constitutes a distribution of

"property" to satisfy § 1325(a)(5)(B), Bell relies heavily on Justice Thomas' concurring opinion in Till v. SCS Credit Corporation, 541 U.S. 465 (2004). Bell's reliance is misplaced. The issue in Till, was the determination of the appropriate interest rate to be paid to an objecting secured creditor whose claim was paid in installments under a Chapter 13 plan, not the modification of a secured creditor's claim as is the case here. The Supreme Court, in a plurality opinion, held that the prime-plus approach should be used to determine the proper interest rate. Id. at 479-80. Justice Thomas' statement in a concurring opinion that "'property' can be cash, notes, stock, personal property or real property; in short, anything of value," Id. at 488, was made in the context of determining the proper way to calculate the interest rate. Neither Justice Thomas' concurrence nor the plurality opinion itself ever addressed or had before it the issue of whether the distribution of a new note and mortgage amounts to property under § 1325(a)(5)(B). Accordingly, the concurrence does not control here. Other courts that have considered this issue agree. See, e.g., In re Martin, 444 B.R. at 545-46 (rejecting debtor's argument that Justice Thomas' concurrence in Till controls to support his argument that a new promissory note constitutes "property" under the bankruptcy code); In re Santiago, 2009 WL 3515705, at *2 (concluding that even though the Debtor argues "'property' can include cash, notes, stock, personal property or real property; in short, anything of value;' . . . the Debtor cannot propose to distribute such 'property' over a period of time that exceeds the plan term"); In re Valdes, 2010 WL 3956814, at *4 (same).

Further, to rule that substituting one promissory note for another, "as opposed to actually providing the creditor with the value of the collateral," as required under 1325(a)(5)(B)(ii) would render this section of the Bankruptcy Code meaningless. See In re Martin, 444 B.R. at 546. Bell's proposal to execute a new promissory note is not equivalent to a one lump payment to Eastern Bank.

11

It is merely a promise to pay. See id. The Code does not allow Bell to create this option. As the Court stated in In re Legowski, "[w]hat is determinative is that the payment obligation is proposed to be modified by the removal of [the creditor's] ability to call the Note and receive payment in full . . . regardless of how that right is denominated. If that right is removed, the obligation is modified and § 1322[d] and § 1325(a)(5) jointly require that payment on the allowed secured claim be made and completed over the life of the plan." 167 B.R. at 716.

Accordingly, because Bell's Plan fails to conform to the requirements of the Bankruptcy Code, the Court finds that the bankruptcy court was correct in sustaining the Trustee's objection and denying confirmation of the Plan.

## IV. Conclusion

For the aforementioned reasons, the bankruptcy court's order sustaining the Trustee's objection and denying confirmation of Bell's Plan is AFFIRMED.

**So ordered.**

/s/ Denise J. Casper
United States District Judge